**MAYRA LOPEZ**
California State Bar No. 346091
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Mayra_Lopez@fd.org

Attorneys for Mr. Mario Puente

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARIO PUENTE, <br><br> Defendant. | CASE NO.: 15-cr-00449-RSH-2 <br><br> Hon. Robert S. Huie <br> Date: February 24, 2023 <br> Time: 2:00p.m. <br><br> **MR. MARIO PUENTE'S SENTENCING MEMORANDUM** |

Mario Puente, by and through his counsel of record, Mayra Lopez and Federal Defenders of San Diego, Inc. (hereinafter "Federal Defenders"), hereby files the following sentencing memorandum. Mr. Puente respectfully requests that this Court impose a sentence of time-served (72 days) with no supervised release to follow in his case.

**I.    A Sentence of Time-Served is Appropriate.**

A sentence of time-served with no supervised release is consistent with the factors this Court must consider under 18 U.S.C. § 3583(e),[1] and it is the most

---

[1] Pursuant to § 3583(e), the Court may consider the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the sentencing range under the guidelines; any pertinent policy statement; the need to avoid unwarranted sentencing disparity; and the need to provide for restitution. *See* 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3552(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)). Punishment is not an appropriate factor and cannot be considered by the Court.

appropriate sanction given the distressing events that occurred during Mr. Puente's February 13, 2023, supervised release revocation hearing. Allowing Mr. Puente to return to his family as soon as possible and begin healing from these events will best remedy his breach of the Court's trust, as well as the Court's breach of trust.

### A. February 13, 2023 Final Revocation Hearing.

On February 13, 2023, Mr. Puente admitted to violating the terms of his supervised release. Although U.S. Probation originally recommended six months' custody and 2 years of supervised release, at the hearing, the parties jointly recommended 10 months' custody with no supervised release to follow. The recommendation for no further supervision was based on Mr. Puente's desire to leave San Diego, separate himself from negative peers, and start fresh. It was further based on the fact that Mr. Puente has successfully completed two prior residential drug treatment programs and knows how to access services in the community. As indicated in the Petition, Mr. Puente entered New Connections, a residential drug treatment program on May 31, 2022, *following* four of the five allegations in the petition.[2] Mr. Puente successfully completed the program. The remaining violation occurred after Mr. Puente shattered his ankle and was prescribed opiates for pain.

During this hearing, Mr. Puente's 13-year-old daughter was seated in the gallery. As part of Mr. Puente's allocution, he expressed a desire to leave San Diego because "everywhere and anywhere I turn, I know somebody." [3] He indicated that "[t]he only way I can – I feel like I can do anything is leaving, leaving what I know…"[4] He also expressed concern that his daughter was hanging out with the wrong people, who might "lead her into the same path I went down." He expressed

---

[2] *See* ECF Doc. No 105 at pg. 3.

[3] *See* U.S. v. Puente, 15-cr-449-BEN, ECF Doc. No. 116 (Transcript of Revocation Proceedings held on 2/13/23), at pgs. 11.

[4] *Id.*

his belief that "the only thing [he] could do for her is try to get her out, try to get her out."[5]

Several minutes later, Judge Benitez asked a U.S. Marshal, "You got cuffs?"[6] The Marshal confirmed he did. Judge Benitez then ordered the 13-year-old girl to leave the spectator area, approach the front of the courtroom, and stand next to her father's lawyer. He told the Marshal to "[p]ut cuffs on her." The Marshal did so, cuffing the girl's hands behind her back. As he did so, she was crying. Judge Benitez then instructed the Marshal to "put[ ] her over there in the jury box for me for just a minute." The Marshal complied, placing the girl in the jury box in handcuffs. She continued to cry.

After a long pause, Judge Benitez released the girl. But he did not allow her to immediately return to her seat. Instead he told her, "don't go away. Look at me."[7] He asked her how she liked "sitting up there" and "the way those cuffs felt on you."[8] Still in tears, she responded that she "didn't like it." He told her she was "an awfully cute young lady" but that if she didn't stay away from drugs, she would "wind up in cuffs" and be "right back there where I put you a minute ago."[9]

### B. The Harm Caused to Mr. Puente's Daughter.

Judge Benitez's actions in this case were psychologically damaging and harmful. According to testimony from the Government Accountability Office (GAO), children can be "severely traumatized" by the use of handcuffs even when "no physical injury is sustained."[10] Psychologists have found that shackling is

---

[5] *See* U.S. v. Puente, 15-cr-449-BEN, ECF Doc. No. 116 (Transcript of Revocation Proceedings held on 2/13/23), at pg. 12.
[6] *Id.* at 13.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 14.
[10] "Seclusions and Restraints: Selected Cases of Death and Abuse at Public and Private Schools and Treatment Centers," Testimony of Gregory D. Kutz before the Committee on Education and Labor, House of Representatives, May 19, 2009, *available at*: https://www.gao.gov/assets/gao-09-719t.pdf.

"humiliating for young people" who are "more vulnerable to lasting harm from feeling humiliation and shame than adults."[11] While a child is "in the midst of their identity and moral development, demeaning treatment by adults may solidify adolescents' alienation" and "send mixed messages about the purpose of the justice system."[12] The use of handcuffs is also "a stigmatizing experience for young people" that "can cause severe stress reactions."[13] Furthermore, restraining children can "mirror past trauma experience, particularly the experience of physical and emotional abuse" and involve "a sense of loss of control, powerlessness, betrayal, fear, humiliation and pain," which can "remain with these youths for a lifetime."[14] Thus, "shackling poses physical and psychological risk to young people."[15]

Having a parent face criminal charges and potential incarceration is—without more—highly traumatic for children. As child psychologists have explained, children are "naturally egocentric" and assume they are "responsible" for all that happens around them, including negative events.[16] Indeed, children of defendants "often blame themselves for their parent's incarceration."[17] Thus, a child who becomes enmeshed in their parent's criminal case is even more likely to

---

[11] Affidavit of Dr. Marty Beyer, clinical psychologist, at 2, *available at*: http://defendyouthrights.org/wp-content/uploads/2014/09/Beyer-Affidavit-w-CV-Jan-2015-Final.pdf.

[12] *Id*. at 4.

[13] Affidavit of Dr. Julian Ford, clinical psychologist, at 2, *available at*: http://defendyouthrights.org/wp-content/uploads/2014/09/Ford-Affidavit-Final-Dec-2014.pdf.

[14] Affidavit of Dr. Robert Bidwell, board-certified pediatrician, at 3, *available at*: http://defendyouthrights.org/wp-content/uploads/2014/09/Bidwell-Affidavit-w-CV-2-18-15.pdf.

[15] Affidavit of Dr. John F. Chapman, clinical child psychologist, at 2, available at: http://defendyouthrights.org/wp-content/uploads/2014/09/Chapman-Affidavit-Final-w-CV-Notarized-2-23-15.pdf.

[16] "For Children, the Default is 'My Fault' When Something Happens," Diane Wagenhals, Institute for Professional Education and Development, Lakeside Educational Network, *available at*: https://lakesidelink.com/blog/for-children-the-default-is-my-fault-when-something-happens/.

[17] "When a Child's Parent Is Incarcerated," Tanja Rothrauff, University of Missouri, *available at*: https://extension.missouri.edu/publications/gh6202.

feel that they have contributed to their parent's incarceration. Judge Benitez's actions caused psychological damage and harm to Mr. Puente's daughter.

### C. Neither a Further Custodial Sentence Nor Supervised Release is Necessary to Deter Mr. Puente.

The pain and powerlessness Mr. Puente felt at being unable to protect his daughter from this senseless act were palpable to almost everyone in that courtroom. Mr. Puente blames himself for the hurt and pain he caused his daughter, who "he states frequently as someone who means the world to him."[18] February 13th was the first time his daughter had attended any of his hearings, and he swears that it will be the last. Mr. Puente plans to do everything he can to avoid being in another courtroom.

Moreover, Mr. Puente has a plan. He intends to move out of California with his family and start anew. His plan shows insight into the criminogenic factors that have caused him to relapse and recidivate in the past. He understands that the biggest risk factor for him is the impact of negative peers, people he grew up with in San Diego that pop up "everywhere and anywhere [he] turn[s]."[19] His understanding of what is necessary to give him the best chance of a positive reentry outcome is consistent with social science research.[20] Further supervision will impede, rather than assist, Mr. Puente's reentry plan.

/ / /

/ / /

/ / /

---

[18] ECF Doc. No. 105.

[19] ECF Doc. No. 116 at pg. 11.

[20] *See e.g.,* Mowen TJ, Boman JH 4th. *The Duality of the Peer Effect: The Interplay Between Peer Support and Peer Criminality on Offending and Substance Use During Reentry.* Crime Delinq. 2018 Jul;64(8):1094-1116. doi: 10.1177/0011128717740529. Epub 2017 Nov 8. PMID: 30976127; PMCID: PMC6453146 (finding that "peer criminality relates to significantly higher odds of substance use and criminal offending, whereas peer support relates to significantly lower odds of substance use and offending").

## II. CONCLUSION

A time-served sentence with no supervised release will allow Mr. Puente to put the distressing events that occurred during his first revocation hearing behind him and start fresh in a new city and state. Moreover, a time-served sentence with no supervised release will ensure finality for everyone. *See United States v. King*, 891 F.3d 868 (9th Cir. 2018) (when an individual is released from custody after a revocation with no further supervision, any appeal is moot and will be dismissed). Mr. Puente has been adequately sanctioned for his breach of the Court's trust. Allowing Mr. Puente to return to his family as soon as possible and begin healing from these events will best remedy the Court's breach of trust. Importantly, this will also help him and his family regain trust in the justice system.

Respectfully submitted,

Dated: February 23, 2023

*s/ Mayra Lopez*
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mario Puente
Email: Mayra_Lopez@fd.org